UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

**ERIN CLEMENTE,**

                                                    PLAINTIFF,

                                        -against-

**STEWART'S SHOPS CORP. AND CHARLES BLOOMER**

                                                    DEFENDANTS.
───────────────────────────────────────────

**COMPLAINT
JURY TRIAL DEMANDED
Civil Action No.** 1:18-cv-374
(LEK/CFH)

Plaintiff, Erin Clemente, complaining of Defendants Stewart's Shops Corp. and Charles Bloomer alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      This civil action is brought on behalf of the Plaintiff, Erin Clemente, pursuant to Title VII of the Civil Rights Act of 1964, and Article 15, New York State Executive Law Rights Law, Article 15, *et seq*. seeking damages against the Defendants Stewart's Shops Corp. ("Stewart's") and Defendant Charles Bloomer ("Mr. Bloomer") to remedy acts of discrimination based on sex in the workplace.

2.      The discrimination based on sex occurred as a result of the Defendant Stewart's failing to prevent its manager, Mr. Bloomer, from using his longstanding position and power to sexually harass Plaintiff.  These actions violated both federal and state law, and thereby the rights of the Plaintiff.

3.      As a consequence of the Defendants' conduct in forcing the Plaintiff to leave her employment as a result of the discrimination based on sex, the Plaintiff suffered

economic loss, including lost wages, mental and emotional trauma, pain and suffering, and anxiety for which she demands the Defendants answer in substantial damages.

## JURISDICTION

4.      Jurisdiction is conferred on this court pursuant to 42 U.S.C. § 2000e-5.

5.      This is an action alleging discrimination in employment in violation of 42 U.S.C. § 2000e-2 ("Title VII") and New York State Executive Law § 290 et seq. ("the Human Rights Law").

6.      Plaintiff asserts that the claims under New York State Law arise from the same set of facts and circumstances as are claimed under Title VII, thus, jurisdiction of this Court is also invoked pursuant to the doctrine of pendent jurisdiction and 28 U.S.C. § 1367 (supplemental jurisdiction).

7.      Plaintiff demands a jury trial of this action.

## PROCEDURAL HISTORY

8.      On June 2, 2017, Plaintiff filed a verified complaint simultaneously with the New York State Division of Human Rights (Division) and the Equal Employment Opportunity Commission (EEOC) in which she alleged that he had been sexually harassed in her employment, and that she had been forced from employment with Defendant Stewart's as a result.  Attached hereto as **Exhibit A** is a true and correct copy of the Complaint.

9.      On December 12, 2017, the Division determined that probable cause existed that Ms. Clemente was discriminated against on the basis of sex by Defendant.   Attached hereto as **Exhibit B** is a true and correct copy of the determination of probable cause.

10.      A Right to Sue Letter was issued by the EEOC on March 14, 2018.  Attached hereto as **Exhibit C** is the Right to Sue Letter.

## PARTIES

11.     Plaintiff, Erin Clemente, is an individual residing in the County of Rensselaer, State of New York.

12.     Plaintiff was born on                   and at all times relevant hereto, she was thirty-one (31) years old.

13.     Defendant Stewart's Shops Corp. is a New York State Corporation with its principal place of business located at 2907 Route 9, Ballston Spa, New York 12020.

14.     Upon information and belief, Defendant Charles Bloomer is an individual residing at 9 Brinker Dr. North, Rensselaer, NY 12144.

15.     Plaintiff was an employee of Defendant Stewart's Shops Corp under supervisory authority of Defendant's employee and manager, Charles Bloomer, from on or about June 2016 until her forced separation from employment due to discrimination based on sex on or about February 1, 2017.          .

## FACTUAL ALLEGATIONS

16.  Plaintiff worked for Defendant Stewart's as a "Partner" in its West Sand Lake, New York store located at 3610 NY-43, West Sand Lake, New York 12019.

17.  Plaintiff did well in her work with Defendant Stewart's and began the manager in training program within two months of starting with Defendant.

18.  On or about September 2016, Plaintiff began to experience sexual harassment from her manager, Charlie Bloomer.

19.  Initially the sexual harassment started out as "locker room humor."  Mr. Bloomer often made crude and inappropriate comments, which the Plaintiff tried to ignore.  The harassment quickly progressed into lewd comments about her body and inquiries about her sex

life with her boyfriend.  For example, he often made comments such as "nice hips" and "nice butt" and asked "are you wearing a g-string today?".

20.  Mr. Bloomer was in charge of setting Plaintiff's schedule.  Mr. Bloomer gradually began scheduling Plaintiff for more night hours and scheduled her to work with him a majority of the time.

21.  The sexual harassment progressed and Mr. Bloomer told Plaintiff many private things about himself and his sex life.

22.  Mr. Bloomer's comments to Plaintiff also included vivid descriptions about the "things he would do" to her.

23.  There is a cooler at the Defendant Stewart's store.  Often when Plaintiff exited the cooler, Mr. Bloomer would ask if she "needed a rub down" and would say he "wanted to warm up by putting [his] head between [her] legs."

24.  Mr. Bloomer often told Plaintiff he had a "thing for red heads" and would ask if Plaintiff's hair color was real and if her "carpet matches the drapes."

25.  Mr. Bloomer often made jokes regarding rape and sexual assault to Plaintiff.  At one point, Plaintiff disclosed to him that she was a rape victim and he responded by prying for details and asking if Plaintiff wanted to take out her aggression by raping and beating him up.

26.  Mr. Bloomer would often touch Plaintiff inappropriately.  Several times when Plaintiff reached down to get the hand-held phone off the bottom shelf, Mr. Bloomer would put his hands on the top of her head and hold her head down while moaning to suggest oral sex.

27.  On or about January 15, 2017, as Plaintiff was washing dishes in the washroom, Mr. Bloomer used pizza tongs to grab and pinch her buttock.  He then slapped Plaintiff on the buttock while she was still washing dishes.

28.  Several customers also asked Plaintiff if Mr. Bloomer has engaged inappropriate behaviors.

29.  Plaintiff discussed the sexual harassment with a co-worker who had similar experiences with Mr. Bloomer.  She, too, had experienced him holding her head down to suggest oral sex as recently as February 1, 2017.  Mr. Bloomer also asked her if she needed "help" pumping her breastmilk or needed to borrow farming equipment for her "udders."

30.  Plaintiff repeatedly told Mr. Bloomer that she was uncomfortable with his conduct. On or about Christmas, 2016, he responded to her by stating, "Yeah, I was thinking last night about what a pervert I am."

31.  In other instances when Plaintiff would tell Mr. Bloomer to stop, his behavior would escalate and he would try to intimidate her.  He told Plaintiff she was a "peon" in the company and that he has been a partner for 26 years and no one would take Plaintiff seriously.

32.  Plaintiff suffers from post-traumatic stress disorder.  Mr. Bloomer's conduct caused her to experience severe emotional distress and increased anxiety.  On or about February 1, 2017, while driving to work, Plaintiff had a panic attack as a result of the sexual harassment and was forced to terminate her employment with the Respondent.

33.  Plaintiff never received an employee handbook or any other information from the Defendant regarding policies and procedures in the event of sexual harassment despite her requests for the same.  In fact, Plaintiff specifically asked Mr. Bloomer, who was her manager, for an employee handbook.

**FIRST CLAIM FOR RELIEF**
**(SEX DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF**
**42 U.S.C. § 2000e-2 ["Title VII"])**

34.    Plaintiff repeats and realleges each of the allegations in each of the

foregoing paragraphs of the complaint.

35.     Plaintiff was the victim of a hostile work environment on the basis of her gender. Mr. Bloomer's unwelcome conduct was so severe and pervasive that it unreasonably interfered with plaintiff's ability to do her job effectively and created an intimidating, hostile and offensive work environment.

36.     Mr. Bloomer was Plaintiff's manager, and thus Plaintiff's complaints were wholly ineffective and discouraged Plaintiff from reporting the sexual harassment she experienced for fear of adverse repercussions.

37.     The working conditions created by Defendants were so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign.

38.     Defendant Stewart's is liable for the acts of Mr. Bloomer under the doctrine of respondeat superior.

39.     The acts of Defendant Stewart's, through its employee, Mr. Bloomer, constitute unlawful discrimination against plaintiff on the basis of her gender in violation of Title VII.

40.     Defendants' actions were intentional, wanton, willful, reckless and malicious and demonstrated utter and heedless disregard for plaintiff's right to be free from sex discrimination in the workplace.

41.     As a direct result of the foregoing, plaintiff is entitled to compensatory damages ("back pay" and "front pay"), damages for pain and suffering and emotional distress, and punitive damages in an amount to be determined by the Court.

**SECOND CLAIM FOR RELIEF**
**(SEX DISCRIMINATION IN EMPLOYMENT IN VIOLATION OF**
**NEW YORK STATE EXECUTIVE LAW § 290 et seq)**

42.     Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the complaint.

43.     Plaintiff was the victim of a hostile work environment on the basis of her gender.  Defendant Bloomer's unwelcome conduct was so severe and pervasive that it unreasonably interfered with plaintiff's ability to do her job effectively and created an intimidating, hostile and offensive work environment.

44.     Defendant Bloomer was Plaintiff's manager, and thus Plaintiff's complaints were wholly ineffective and discouraged Plaintiff from reporting the sexual harassment she experienced for fear of adverse repercussions.

45.     Defendant Stewart's knew or should have known about the sexual harassment and failed to take effective or remedial action.

46.     The working conditions created by Defendants were so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign.

47.     The acts of defendant Stewart's, together with the acts of its employee, Defendant Bloomer, constitute unlawful discrimination on the basis of gender in violation of the New York State Human Rights Law.

48.     Defendants' actions were intentional, wanton, willful, reckless and malicious and demonstrated utter and heedless disregard for plaintiff's right to be free from sex discrimination in the workplace.

49.     As a direct result of the foregoing, the plaintiff is entitled to compensatory damages ("back pay" and "front pay"), damages for pain and suffering and emotional

distress, and punitive damages in an amount to be determined by the Court.

## THIRD CLAIM FOR RELIEF
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

50.     Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the complaint, above, as though fully set forth herein.

51.     The Defendants' intentional and/or reckless conduct, as herein described, was outrageous, shocking and exceeded all reasonable bounds of decency.

52.     The conduct of the Defendants caused Plaintiff to suffer severe emotional distress.

53.     Defendants, in so conducting themselves, intended to cause Plaintiff emotional distress.

54.     Defendants were without justification for their actions.

55.     The conduct of the Defendants was willful, wanton and reckless, such that punitive damages are warranted.

56.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of all other courts otherwise having jurisdiction over this matter.

## FOURTH CLAIM FOR RELIEF
### (NEGLIGENCE)

57.     Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the complaint, above, as though fully set forth herein.

58.     Defendant Stewart's was negligent in the hiring and supervision of Plaintiff's supervisor, Defendant Bloomer.

59.     Defendant Stewart's negligence proximately caused plaintiff's injuries.

60.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of all other courts otherwise having jurisdiction over this matter.

### FIFTH CLAIM FOR RELIEF
### (NEGLIGENCE PER SE)

61.     Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the complaint, above, as though fully set forth herein.

62.     Defendant Stewarts willfully, wantonly and knowingly permitted a hostile work environment to exist.

63.     Defendant Stewart's conduct was so palpably contrary to the dictates of common prudence that it can be stated without hesitation or doubt that no careful company would have allowed such conduct to occur.

64.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of all other courts otherwise having jurisdiction over this matter.

### SIXTH CLAIM FOR RELIEF
### (Prima Facie Tort)

65.     Plaintiff repeats and realleges each of the allegations in each of the foregoing paragraphs of the complaint, above, as though fully set forth herein.

66.     The Defendants willfully, wantonly and knowingly permitted a hostile work environment to exist, knew or should have known about the sexual harassment, failed to take effective or remedial action, and failed to supervise and hire appropriate managers. Defendants thus have intentionally inflicted harm on Plaintiff without excuse or justification.

67.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of all other courts otherwise having jurisdiction over this matter.

**WHEREFORE**, plaintiff seeks a Judgment against defendants, ordering, adjudging and decreeing that:

A.     Defendants violated Title VII and/or the New York State Human Rights Law;

B.     Defendants shall reimburse plaintiff for all loss of earning capacity ("front pay" and "back pay") and other monetary losses she has suffered as a result of defendants' conduct;

C.     Defendants shall pay damages to plaintiff for pain and suffering and emotional distress;

D.     Defendants shall pay punitive damages to plaintiff;

E.     Defendants shall pay the costs, disbursements, expenses and reasonable attorneys' fees incurred by plaintiff in the prosecution of this action;

F.     Plaintiff shall be awarded such other and further relief as the Court deems appropriate.

Dated:        March 19, 2018
              Albany, New York

                              s/ George J. Szary
                              s/ Nicole R. Rodgers
                              _____
                              George J. Szary, Esq.
                              Bar Roll No. 103572
                              Nicole R. Rodgers, Esq.
                              Bar Roll No.  514912
                              DeGRAFF, FOY & KUNZ, LLP
                              Attorneys for Plaintiff
                              41 State Street
                              Albany, New York 12207
                              (518) 462-5300
                              gszary@dfklawfirm.com
                              nrodgers@dfklawfirm.com

**EXHIBIT A**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>ERIN CLEMENTE,<br><br>                                   Complainant,<br>             v.<br><br>STEWART'S SHOPS CORP,<br>                                     Respondent. | **VERIFIED COMPLAINT**<br>Pursuant to Executive Law,<br>Article 15<br><br>Case No.<br>**10188473** |

Federal Charge No. 16GB703104

I, Erin Clemente, residing at 160 8th Avenue, Troy, NY, 12179, charge the above named respondent, whose address is 2907 Route 9, Ballston Spa, NY, 12020 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of sex.

Date most recent or continuing discrimination took place is 2/1/2017.

The allegations are:

1. I am female. Because of this, I have been subject to unlawful discriminatory actions.

2. See attached notarized complaint.


Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of sex, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

_Erin Clemente_
Erin Clemente

STATE OF NEW YORK   )
                    )   SS:
COUNTY OF ALBANY    )

Erin Clemente, being duly sworn, deposes and says: that he/she is the complainant herein; that he/she has read (or had read to him or her) the foregoing complaint and knows the  content thereof; that the same is true of his/her own knowledge except as to the matters therein stated on information and belief; and that as to those matters, he/she believes the same to be true.

_Erin Clemente_
Erin Clemente

Subscribed and sworn to
before me this   12 day
of     July        , 2017

_Signature of Notary Public_
Signature of Notary Public

GEORGE J SZARY, ESQ
Notary Public, State of New York
Registration No 4987732
Qualified in Albany County
My Commission Expires   12-24-17

- 2 -

RECEIVED

JUN 0 2 2017

Division of Human Rights
Albany Regional Office

STATE OF NEW YORK
STATE DIVISION OF HUMAN RIGHTS

---

(State Division of Human Rights on the Complaint of)
**ERIN CLEMENTE,**

Claimant,

-against-

**STEWART'S SHOPS CORP.,**

Respondent.

**COMPLAINT**

Art. 15 of the New York State
Human Rights Law (§296) and
Federal Civil Rights Act of 1964,
Title VII (42 U.S.C. § 2000e,
et seq.)

---

I, Erin Clemente, residing at 160 8th Avenue, Troy, New York, state the following as and for a charge against the above-named Respondent:

1. I am filing a complaint against Stewart's Shops Corp. ("Respondent"), whose address is 2907 Route 9, Ballston Spa, New York.

2. The most recent act of discrimination occurred on or about February 1, 2017.

3. I was subject to repeated and continual sexual harassment in the area of employment in violation of the Article 15 of the Executive law of the State of New York and the Federal Civil Rights Act of 1964.

4. I am 32 years old and my date of birth is                    .

5. The Respondent has 15 or more employees.

6. I worked for Respondent as a partner at the Respondent's store located at 3610 NY-43, West Sand Lake, New York 12019. My employment with Respondent began in June 2016.

7. I did well in my employment with the Respondent and began the manager in training program within two months of starting with the Respondent.

8. On or about September 2016, I began to experience sexual harassment from my manager, Charlie Bloomer.

9. Initially the sexual harassment started out as "locker room humor." Mr. Bloomer often made crude and inappropriate comments, which I tried to ignore. The

harassment quickly progressed into lewd comments about my body and inquiries about my sex life with my boyfriend. For example, he often made comments such as "nice hips" and "nice butt" and asked "are you wearing a g-string today?"

10. Mr. Bloomer was in charge of setting my schedule and I gradually began to be scheduled for more night hours and was scheduled to work with him a majority of the time.

11. The sexual harassment progressed and Mr. Bloomer told me many private things about himself and his sex life.

12. Mr. Bloomer's comments to me also included vivid descriptions about the "things he would do to me."

13. There is a cooler at the Respondent's store. Often when I exited the cooler, Mr. Bloomer would ask "if I needed a rub down" and would say he "wanted to warm up by putting his head between my legs."

14. Mr. Bloomer often told me he had a "thing for red heads" and would ask if my hair color was real and if "my carpet matches the drapes."

15. Mr. Bloomer often made jokes regarding rape and sexual assault to me. I had disclosed to him that I was a rape victim and he responded by prying for details and asking if I wanted to take out my aggression by raping and beating him up.

16. Mr. Bloomer would often touch me inappropriately. Several times when I reached down to get the hand-held phone off the bottom shelf, Mr. Bloomer would put his hands on the top of my head and hold my head down while moaning to suggest oral sex.

17. On or about January 15, 2017, as I was washing dishes in the washroom, Mr. Bloomer used pizza tongs to grab and pinch my buttock. He then slapped me on the buttock while I was still washing dishes.

18. Several customers also asked me if Mr. Bloomer has engaged inappropriate behaviors.

19. I discussed the sexual harassment with a co-worker who had similar experiences with Mr. Bloomer. She, too, had experienced him holding her head down to suggest oral sex as recently as February 1, 2017. Mr. Bloomer also asked her if she needed "help" pumping her breastmilk or needed to borrow farming equipment for her "udders."

20. I repeatedly told Mr. Bloomer that I was uncomfortable with his conduct. On or about Christmas, 2016, he responded to me, "Yeah, I was thinking last night about what a pervert I am."

2

21.  In other instances when I would tell Mr. Bloomer to stop, his behavior would escalate and he would try to intimidate me.  He told me I was a "peon" in the company and that he has been a partner for 26 years and no one would take me seriously.

22.  I suffer from post-traumatic stress disorder.  Mr. Bloomer's conduct caused me to experience severe emotional distress and increased anxiety.  On or about February 1, 2017, while driving to work, I had a panic attack as a result and was forced to terminate my employment with the Respondent.

23.  I never received an employee handbook or any other information from the Respondent regarding policies and procedures in the event of sexual harassment despite my requests for the same.  In fact, I specifically asked Mr. Bloomer, who was my manager, for an employee handbook.

24.  I have not commenced any other civil or criminal action, nor do I have an action pending before any administrative agency under any other law of this State based upon this same unlawful discriminatory practice.

Dated: May 23, 2017

Erin Clemente

## NOTARIZATION OF THE COMPLAINT

Based on the information contained in this form, I charge the above-named Respondent with an unlawful discriminatory practice, in violation of the New York State Human Rights Law.

By filing this Complaint, I understand that I am also filing my employment complaint with the United States Equal Opportunity Commission under the Americans with Disabilities Act (covers disability related to employment), Title VII of the Civil Rights Act of 1964, as amended (covers race, color, religion, national origin, sex relating to employment) and/or the Age Discrimination in Employment Act, as amended (covers ages 40 years of age or older in employment), or filing my housing/credit complaint with HUD under Title VIII of the Federal Fair Housing Act, as amended (covers acts of discrimination in housing), as applicable.  This complaint will protect your rights under Federal Law.

I hereby authorize the New York State Division of Human Rights to accept this complaint on behalf of the U.S. Equal Employment Opportunity Commission, subject to the statutory limitations contained in the aforementioned law and/or to accept this complaint on behalf of the U.S. Department of Housing and Urban Development for review and additional filing by them, subject to the statutory limitations contained in the aforementioned law.

I have not filed any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

I swear under penalty of perjury that I am the complainant herein; that I have read (or have had read to me) the foregoing complaint and know the contents of the complaint; and that the foregoing is true and correct, based on my current knowledge, information and belief.

Erin Clemente

Subscribed and sworn before me this
___ day of May, 2017.

Notary Public

MARILYN S. CURTISS
Notary Public, State of New York
Qualified in Albany County
Reg. No. 01CU5065279
Commission Expires Sept. 3, 2018

**EXHIBIT B**



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

ERIN CLEMENTE,

                                Complainant,

                v.

STEWART'S SHOPS CORP., CHARLES BLOOMER,

                                  Respondents.

**DETERMINATION AFTER
INVESTIGATION**

Case No.
10188473

---

Federal Charge No. 16GB703104

On 6/2/2017, Erin Clemente filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondents with an unlawful discriminatory practice relating to employment because of sex in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondents have engaged in or are engaging in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated:      December 12, 2017
             Binghamton, New York

                    STATE DIVISION OF HUMAN RIGHTS

By:                                   
                              Victor P. DeAmelia
                              Regional Director



RECEIVED
DEC 21 2017
BY:

## Information to the Parties
## Following Determination of Probable Cause

The New York State Division of Human Rights ("Division") is the administrative agency charged with enforcing the New York State Human Rights Law. The Division investigates complaints of discrimination, determines whether there is probable cause to believe that discrimination has occurred, and conducts a public hearing of the complaint where probable cause is found. Probable cause has been found in this case, and the matter will now proceed to a public hearing before an Administrative Law Judge.

If a Complainant does not have a private attorney, the Division will assign an attorney to present the case in support of the complaint. The Division attorney at all times represents the Division, not the Complainant personally. Substitutions and reassignments of Division attorneys and Administrative Law Judges are within the Division's discretion.

The Division generally schedules public hearings for two consecutive days, which may be allocated with one day each for the presentation of Complainant's and Respondent's cases. There is no formal discovery. Parties may exchange document and witness lists at the preliminary conference, which will take place during the first hour of the first day of the public hearing.

Prior to receiving the notice setting out the date and time of the public hearing, parties may receive notice of a Pre-Hearing Settlement Conference, which will be scheduled several weeks before the public hearing. If Respondent wishes to make an offer of settlement prior to that time, Respondent should contact the Hearing Attorneys Unit at (718) 741-8398.

The Division has its own Rules of Practice which can be found on the Division's website, www.dhr.ny.gov. The New York Civil Practice Law and Rules and the Federal Rules of Procedure and Evidence are inapplicable to Division proceedings. Please cite to New York State case law wherever possible in all submissions to the Division.

The parties have a continuing obligation to keep the Division advised as to any changes in the case including:

1. Changes in name, address and/or telephone number of the parties and successors in interest.
2. Commencement of proceedings in another forum.
3. Settlement of the case.

Any of the above information should be timely provided to the Division, IN WRITING on the attached form to the following by mail or fax:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8273**

If the Complainant wishes to seek dismissal of this matter to proceed in an alternate forum, an application should be filed with the Chief Calendar Clerk at the above listed address, preferably within twenty (20) days of the date of this determination.

The parties also have a continuing obligation to maintain certain information, records, etc., as follows:

1. Parties must keep track of the whereabouts of their witnesses.

2. Parties are obligated to identify and preserve all evidence relating to the case, including evidence relating to any incidents which relate to the case that occur after the Division makes a finding of probable cause, and including all evidence whether for or against that party's interests.

3. Parties are responsible for recording and keeping evidence relating to any increase or reduction in damages.

Finally, if you would like to request a copy of the investigation file, please do so promptly.  Put your request in writing to:

**New York State Division of Human Rights**
**Attn: FOIL Officer**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-3217**
**Email: foil@dhr.ny.gov**

Please note that your request for documents, or the Division's response or date of response thereto, will not affect the date of the hearing, and cannot be used to request a postponement or rescheduling of the hearing.  Costs for copying, established by statute, will apply.

## FREQUENTLY ASKED QUESTIONS

The New York State Human Rights Law and the Division's Rules of Practice outline the policies and procedures that govern hearings administered by the New York State Division of Human Rights.  The Law and the Rules are available on the Division's website at www.dhr.ny.gov.  Parties may consult with their own attorneys on questions about and interpretations of the Law and/or the Rules.  The following are general responses to frequently asked questions.  The responses are not legal advice, and should be used for informational purposes only.

## Before the Public Hearing

1.  **I recently received a "Determination After Investigation" letter from the Division, stating that there is probable cause to believe that discrimination has occurred in my case and that the case will be scheduled for a public hearing.  What does this mean and when will the case be scheduled for a hearing?**

    Where the Division finds probable cause after investigation, the Human Rights Law requires that the entire case be heard at a public hearing before an administrative law judge, where all relevant evidence is presented and the testimony of witnesses is taken under oath and subject to cross-examination.  You will receive written notice from the Division of the hearing date, time, and location of the hearing. The hearing usually is scheduled to occur 4 to 6 weeks from the date of the written notice.  Prior to receiving this notice, you may receive notice of a Pre-Hearing Settlement Conference, where your case will come before an Administrative Law Judge for the purpose of exploring settlement.

2.  **Do we pick the dates for the hearing?**

    No.  The Division selects dates for a public hearing, and notifies the parties in writing through the notice of hearing.

3.  **What do I bring to the hearing, such as documents, witnesses, etc.?**

    The parties should identify and bring all documents and witnesses relevant to their claims and/or defenses.  The parties should review the notice of hearing, which is issued via mail.

4.  **Now that the case is scheduled for a hearing, what happens next?**

    The case proceeds to a public hearing on the scheduled date.  The Complainant may consult with his or her own attorney.  If Complainant does not have an attorney, please wait to be contacted by a Division attorney, who will present the case in support of the complaint.  Further, the parties should review the notice of hearing, which is issued via mail.

5.  **When should an answer be filed and can it be faxed?**

    An answer should be served by the respondent(s) on all parties and the Administrative Law Judge at least two (2) business days before the public hearing.  This is a statutory requirement.  All formal papers, including but not limited to the answer, must be submitted via personal service, mail, or fax (with an original to follow) for proper docketing and timely filing.  Formal papers submitted via electronic mail are deemed courtesy copies and do not constitute proper service.

## Adjournments

**6.** **What should I do if I have a conflict with the hearing date that is scheduled?**

You should submit, as early as possible, a written request for an adjournment of the hearing, stating the basis for your request, to all parties and the Administrative Law Judge.

**7.** **On what basis will the judge grant an adjournment? Will I receive a letter with new dates?**

Adjournment of a public hearing is granted only for actual engagement before a higher tribunal on the specific dates of the public hearing, or for other good cause shown as determined by the Division. If a case is adjourned, the Division will schedule a new hearing date.

## Public Hearing

**8.** **What happens if I do not appear for the hearing?**

A complainant's failure to appear at a public hearing may result in a dismissal of a complaint, and a respondent's failure to appear may result in a default finding against a respondent.

**9.** **How long is the hearing?**

Public hearings are generally scheduled for two (2) days.

**10.** **Can I speak with the Judge?**

*Ex parte* communication (*i.e.*, by only one party) with the judge assigned to the case is strictly prohibited. The parties may jointly request a conference with a judge through the Office of Administrative Law Judges.

## Additional Information

**11.** **I have more questions. Where can I call for more information?**

If necessary, you may call Shirese Taylor, Chief Calendar Clerk, at (718) 741-8400. We do request that you call only if the situation is urgent. Please do not call to ask the status of your case; the Division will contact *you* at the appropriate time. Frequent telephone contact can interfere with the prompt processing of your hearing. Please do not call your regional office; they will not have information on the hearing process.

## IF YOU MOVE, SETTLE, OR INTEND TO CHANGE FORUM
### Complete and return this form to:

**New York State Division of Human Rights**
**Attn: Chief Calendar Clerk**
**One Fordham Plaza, 4th Floor**
**Bronx, New York 10458**
**Fax: (718) 741-8273**

Re:     Erin Clemente v. Stewart's Shops Corp., Charles Bloomer
        Case No. 10188473

**New name, address, and/or telephone:**

NAME: _____

ADDRESS: _____

_____

TELEPHONE: _____

I WILL BE AT MY NEW ADDRESS ON OR AFTER: _____

Please indicate below the name, address, and telephone number of a person who may be contacted and will know your whereabouts if the Division cannot locate you:

_____

_____

_____

**Commencement of proceedings in another forum, or settlement:**
Below please indicate, for other proceedings, the name of the forum and the name, address, and telephone number of the attorney handling the matter. For settlement, please explain briefly the circumstances under which the case was settled, and whether the terms have been complied with, and give a contact telephone number and sign below.

_____

_____

_____

_____          _____
Telephone Number                 Signature

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:       Files

FROM:   Victor P. DeAmelia
            Regional Director

REGION:  Albany

DATE: December 8, 2017

SDHR CASE NO: 10188473-17-E-S-E

Federal Charge No. 16GB703104

SUBJECT:    Erin Clemente v. Stewart's Shops Corp.; Charles Bloomer

---

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.    CASE SUMMARY

This is a verified complaint, filed by complainant, Erin Clemente, on Fri 6/2/2017.  The complainant who is female, charges the respondents with unlawful discriminatory practices in relation to employment because of sex.

### II.    SUMMARY OF INVESTIGATION

Complainant's Position:

The Complainant was hired by the Respondent, Stewart's Shops Corp., on around June 2016. The Complainant was hired as a Partner at the Ballston Spa, NY location. The Complainant alleges that she was sexually harassed by her manager, Respondent Charles Bloomer. The Complainant alleges that she was not given a handbook with a number to call in order to report the incidents. The Complainant alleges that due to this she had to endure the hostile work environment which exacerbated her pre-existing PTSD. The Complainant alleges that as the harassment escalated her manager, Charles Bloomer, scheduled her to work the night shifts with little to no days off.  The Complainant alleges that the Respondent failed to satisfy its responsibility to provide its employees proper resources and reasonable care in preventing and correcting the development of a hostile work environment.

Respondent's Position:

The Respondent asserts that it did fulfill its duty as an employer by providing its employees a handbook of policies and procedures as well as mandating a new hire orientation where sexual harassment is discussed. The Respondent alleges that it handled the situation properly once it

was made aware of the issue on or around February 2nd 2017. The Respondent asserts that it investigated the complaint thoroughly and quickly as within its expected duty.

Investigative Steps:
- Conducted a one-party fact-finding conference with Complainant on October 12, 2017;
- Conduced a one-party fact-finding conference with Respondent on October 12, 2017;
- Provided Complainant and Respondent with the notes from the other party;
- Reviewed all documentation and witness statements provided by Complainant and Respondent.

Investigator's Observations:

The Complainant was hired by the Respondent on or around June, 2016, as a Partner. The Complainant worked under manager, Charles Bloomer, since the time of her hire at the Ballston Spa, NY location. The Complainant quit on or around February 1st, 2017. The Complainant alleges that the sexual innuendoes from her manager, Charles Bloomer, began in or around September, 2016.

The Complainant alleges that she was sexually harassed by her manager- Charles Bloomer. The Complainant asserts that there were numerous sexual innuendoes made about her body and that he theoretically spoke about performing sexual gestures for the Complainant which began in or around September of 2016. The Complainant also alleges that Mr. Bloomer would offer up private information about his sexual health and sexual encounters with his wife as the topic of conversation. The Complainant alleges that she told him that the information was inappropriate and was an uncalled for topic of discussion. The Complainant alleges that Mr. Bloomer would constantly then turn the situation into locker room humor to divert from the serious inappropriateness of the conversation. The Complainant alleges that she, as well as other female employees, have been subject to enduring these situations. The Complainant alleges that when she would attempt to stand up after squatting down to reach for the palm pilot, which is located on the floor, Mr. Bloomer would hold her head down at his waist and moan, insinuating oral sex. The Complainant stated that this happened several times throughout her employment, almost every time she reached for the palm pilot, which is necessary to do audits. Complainant also alleges that Mr. Bloomer further escalated to pinching her butt with tongs in or around January of 2017.

The Respondent looked into said allegations in the course of its investigation and provided its investigation notes (R- Exhibit 2). Notes from the interview with Mr. Bloomer on February 3, 2017 regarding the allegations indicated that Mr. Bloomer did admit to having done the majority of the allegations, including pinching the Complainant's buttocks with tongs while she was cleaning dishes, and holding her head down at his waist insinuating oral sex. Interview notes from two other female employees, Jess and Hannah, on or around February, 3 as well indicated inappropriate comments made to them by Mr. Bloomer, as well as being in uncomfortable situations because of these comments. Said notes also include statements indicating that the relationship between the Complainant and Mr. Bloomer was weird in nature. Hannah stated in her interview that the Complainant had entertained a few inappropriate comments by replying and laughing.

The Complainant alleges that she was not given an employee handbook with a number to call so that she would be able to report the incidents. The Complainant alleges that it is because of this the inappropriate comments and environment was able to escalate to the level of physical contact that it reached. The Respondent asserts that every employee was given an employee manual and required to attend a new hire orientation. The Complainant was in attendance to the new hire orientation (R- Exhibit 3). A list of topics discussed at the orientation was also provided and Sexual Harassment was on that list. Id. The Complainant then states in the one-party conference that she did receive a manual, however, it said refer to the sexual harassment policy & procedures sheet which she stated was not included in the manual. The Respondent asserted that the list of ombudspersons with names and numbers are posted in every district manager's office. The Complainant stated that there were not forms posted in or around her store indicating the policy or a point of contact to report incidents.

Complainant acknowledges that she did speak to the District Manager weekly as well as had his cell phone number (See Complainants Conference Notes). The District Manager was expected to visit the stores weekly in person or by phone according to the Respondent (See Respondent Conference Notes). The Complainant indicated that he visited monthly but they did speak over the phone weekly and on some occasions several times a week. The Complainant also acknowledges that she did have access to other store managers when she worked at other locations from time to time.

The Complainant alleges that due to not having the proper resources she had to endure the hostile work environment which exasperated her pre-existing PTSD. The Complainant states that she was diagnosed with PTSD from a prior rape incident that happened in 2014. The Complainant asserts that she disclosed the history of sexual assault to Mr. Bloomer in hopes that he might refrain from his inappropriate behavior. The Complainant alleges that the claim was met with other sexual innuendoes and progressed to her becoming touched- grabbed inappropriately with the tongs in or around January, 2017 (R-Exhibit 1; C-Conference Notes). The Complainant states that she was reluctant to tell her family about the incident because of her PTSD. The Complainant states that after being touched she had a severe anxiety attack prior to going into work on February 1st, 2017.

The Respondent asserts that they could not alleviate the situation if it was not reported. They were not made aware of the existing environment. The Complainant quit on February 1st and submitted a formal complaint via email to Jacki Merritt, employee in the Personnel Department, on February 2, 2017 at 11:15am (R-Exhibit 1). Ms. Merritt then contacted the Complainant by 4pm that same day-February 2, 2017 to request a meeting. Id. The meeting was scheduled for 9am February 3rd. The Respondent then informed the Complainant that despite her resignation they would continue her pay for the weeks scheduled hours as well as offered her continued employment in her store or another of her choosing. Following the meeting that afternoon-February 3rd, Alison Donohue from the Personnel Department met with the Complainant's manager, Mr. Bloomer, to discuss the allegations. During this meeting, Mr. Bloomer was informed that he was suspended effective immediately until the commencement of the investigation (R-Exhibit 1, R-Conference Notes). On or around February 5th Mr. Bloomer was terminated due to findings of their investigation (R-Exhibit 2). The Respondent did indicate that

over the course of their investigation they found evidence that indicated both the Complainant and Respondent made verbally inappropriate jokes of a sexual nature towards each other in the work place. Id. On or around February 6, 2017 the Respondent contacted the Complainant in regards to the investigation and to inform the Complainant that her job was still available if she wanted it. The Respondent asserts that the Complainant never returned their calls. The Complainant states that she had no interest in communicating with the Respondent due to her experience working for them. Complainant stated that she would not have returned to work, regardless of whether Mr. Bloomer was there or not.

The Complainant alleged that as the harassment escalated, Mr. Bloomer began to schedule her to work the night shifts with little to no days off.  Complaint acknowledged, however, that the employee that been scheduled to work the night shift had quit and that Respondent was short-staffed. Complainant also acknowledged that she agreed to handle the night shift to be a team player. She stated that Mr. Bloomer advised her that she was the only person available for the night shift because she didn't have kids and was not going to school. Complainant confirmed that Mr. Bloomer never required her to acquiesce to his sexual conduct to obtain a preferential schedule.

Submitted by: _____

Michael Turbush
Human Rights Specialist II

## III.   BASIS FOR DETERMINATION

Complainant, Erin Clemente, began her employment with Respondent, Stewart's Shops Corp., in or about June, 2016, as a Partner, under the supervision of Store Manager, Respondent Charles Bloomer. Complainant alleged that Mr. Bloomer subjected her to sexual harassment beginning in or about September, 2016, and continuing to the date of her voluntary resignation, on or about February 1, 2017. Complainant alleged that Respondent failed to take appropriate remedial action and that she was forced to resign.

Respondent Charles Bloomer was served with the Complaint on November 29, 2017, but he did not respond.

The investigation reveals that there is probable cause to believe that the Complainant may have been discriminated against based on her sex, female. Complainant indicated that she was never provided with Respondent's sexual harassment policy and that when she told her Store Manager that his conduct was inappropriate, he told her that no one would believe her.

Under these circumstances, the Complainant may have reasonable believed she had no one to complain to, or that any efforts to complain would be futile. There is a question of fact whether Respondent had an effective sexual harassment policy, properly communicated to employees,

and whether Complainant reasonably concluded that Respondent would not take effective remedial action if she complained.

In a sexual harassment case involving a supervisor which results in a tangible employment action against the victim— "quid pro quo" harassment—the employer is strictly liable. A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. In the instant case, the only possible tangible action identified in Complainant's allegations, was that Mr. Bloomer began to schedule Complainant for late night shifts. Complainant confirmed that Respondent was short-staffed and that she agreed to work late nights to be a team player. Complainant also acknowledged that Mr. Bloomer did not make any offer to change her schedule contingent upon her acquiescence to his improper conduct.

In a sexual harassment case, involving a supervisor, which does not involve a tangible employment action against the victim— "hostile environment" harassment—the employer will be liable only if it cannot show either (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, or (b) that the plaintiff employee unreasonably failed to take advantage of any protective or corrective opportunities by the employer or to avoid harm otherwise.

In the instant case, Complainant first reported her concerns about Mr. Bloomer's conduct to Respondent's Human Resources (HR) staff on February 2, 2017—the day after she resigned. Complainant alleged that she had never been provided with Respondent's sexual harassment policy and did not know how to contact Respondent's HR staff. However, Complainant did report that she had regular interaction with Respondent's District Manager and other Store Managers. The evidence establishes that Complainant told her mother about her concerns and that her mother provided her with the number for Respondent's HR department. Upon notification, Respondent immediately suspended Mr. Bloomer and then terminated him on February 5, 2017. Complainant was also compensated for all hours that she was scheduled to work, at the time of her internal complaint, and Respondent reached out to her on multiple occasions to invite her back to work at her same location, or at any other store location of her choosing. Complainant indicated that she was not willing to return to work, regardless of whether Mr. Bloomer was terminated.

Respondent asserted that Complainant was provided with its sexual harassment policy and was trained on the procedure for reporting any violations during her new hire orientation. However, taking Complainant's allegations as true—that she was not provided with the policy or trained on it—there is a question of fact whether Respondent maintained an effective sexual harassment policy which was made available to employees.

Complainant further asserted that when she advised Mr. Bloomer that his conduct was inappropriate, he told her that she was a peon in the company and no one would believe her. The investigation establishes that there is a question of fact whether Complainant reasonably did not complain to the employer, prior to February 2, 2017, based on fear that prompt remedial action would not occur.

These material issues of fact in dispute would best be resolved at a Public Hearing where testimony can be taken under oath and all the questions surrounding the issue of discriminatory practices can be examined in greater detail.

Reviewed & Approved: _____

Victor P. DeAmelia
Regional Director

## IV.   DETERMINATION

Based on the foregoing, I find probable cause to support the allegations of the complaint.

_____

Victor P. DeAmelia
Regional Director

**EXHIBIT C**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Erin Clemente**<br>**32 Hamilton Ave**<br>**Troy, NY 12180** | From: | **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2017-03104** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [ ] | The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [X] | Other (briefly state)  **Charging party wishes to pursue matter in Federal District court.** |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_signature_

**Kevin J. Berry,**
**District Director**

March 14, 2018

(Date Mailed)

Enclosures(s)

cc:

| Attn: Allison Donohue<br>STEWART'S SHOPS CORP.<br>2907 Route 9<br>Ballston Spa, NY 12020 | DeGraff Foy, & Kunz LLP<br>Attn: Nicole R. Rodgers, Esq.<br>41 States Street<br>Albany, NY 12207 |
|---|---|

MAR 16 2018